FILED

Oct 03 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ anthonyh          DEPUTY

1    **Mark Pollard, (*pro per*)**
2    **15055 Kensal Court**
     **Valley Center, CA 92082**
3    **(760) 877-1277**
     (Defendant)
4

5

6

7

8              **THE UNITED STATES FEDERAL DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11
     Plaintiff,                        )   **Civil Action No. 19cv0855-CAB-BGS**
12                                      )   [*The Honorable Judge Cathy A.*
                                        )   *Bencivengo*]
13       Anton Ewing, JD                )
                                        )   **NOTICE OF MOTION AND**
14                                      )   **MOTION BY DEFENDANT MARK**
     vs.                                )   **POLLARD TO ACCEPT SERVICE**
15                                      )   **AND MOTION BY MARK**
     Defendant,                         )   **POLLARD TO DISMISS**
16                                      )   **COMPLAINT**
                                        )
17       Defendant, Mark Pollard, an    )
                                        )   **[PER CHAMBERS, NO ORAL**
18   individual                         )   **ARGUMENT UNLESS ORDERED**
                                        )   **BY THE COURT]**
19                                      )
                                        )
20                                      )
                                        )
21                                      )
                                        )   **DATE:**
22                                      )   **TIME:**
                                        )   **DEPT:**
23   _____)
24

25       I, Defendant Mark Pollard, due to the uncertainty of my health and longevity,

26   and to avoid further Harassment by Plaintiff, I hereby respectfully assume service and

27   Motion to Dismiss Plaintiff's Anton Ewing's COMPLAINT.
28

**MOTION:**

Defendant Mark Pollard moves this Court for an order granting their Motion to Dismiss Complaint of Anton Ewing pursuant to Federal Rule of Civil Procedure §12(b)(1), on the grounds that Plaintiff lacks Article III standing, and therefore, this Court lacks subject matter jurisdiction.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings, papers, and other documents on file in this action, and such further evidence or argument as the Court may properly consider at or before the hearing on this Motion.

Dated: October 3, 2019

Mark Pollard, Defendant
Pro per

1

## <u>CERTIFICATE OF CM/ECF SERVICE</u>

2

3

      The undersigned hereby certifies that a true and correct copy of the above and

4

foregoing document has been served on October 3, 2019, to all counsel of record who

5

are deemed to have consented to electronic service via the Court's CM/ECF system per

6

Civil Local Rule 5.4. Any counsel of record who have not consented to electronic

7

service through the Court's CM/ECF system will be served by electronic mail, first

8

9

class mail, facsimile, and/or overnight delivery.

10

11

12

Christina Pollard

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENANT'S NOTICE OF MOTION & MOTION TO DISMISS COMPLAINT**

**Mark Pollard, (*pro per*)**
**15055 Kensal Court**
**Valley Center, CA 92082**
**(760) 877-1277**
(Defendant)

### THE UNITED STATES FEDERAL DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Plaintiff, | Civil Action No. 19cv0855-CAB-BGS |
| | [*The Honorable Judge Cathy A. Bencivengo*] |
| Anton Ewing, JD | |
| | **NOTICE OF POINTS AND** |
| vs. | **AUTHORITIES BY MARK** |
| | **POLLARD IN SUPPORT OF** |
| Defendant, | **MOTION TO DISMISS** |
| | **COMPLAINT** |
| Defendant, Mark Pollard, an | |
| | **[PER CHAMBERS, NO ORAL** |
| individual | **ARGUMENT UNLESS ORDERED** |
| | **BY THE COURT]** |
| | **DATE:** |
| | **TIME:** |
| | **DEPT:** |

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Mark Pollard moves this Court for an Order dismissing Plaintiff

Anton Ewing's Complaint on the ground that he has not suffered a concrete injury as a

1   result of a single telephone call he received on or around May 7, 2019, and, thus, lacks

2   Article III standing.  This Court, therefore, lacks subject-matter jurisdiction.

3        Defendant Mark Pollard moves this Court for an order granting their Motion to

4   Dismiss Complaint of Anton Ewing pursuant to Federal Rule of Civil Procedure

5   §12(b)(1), on the grounds that Plaintiff lacks Article III standing, and therefore, this

6   Court lacks subject matter jurisdiction.

7        Ewing lacks standing to bring this putative class action because he has not, and

8   cannot, plead an "injury-in-fact" with respect to the allegation of Defendant placing

9   one telephone call from Defendants personal cell phone to Ewing's cell phone.

10  According to the United States Supreme Court in *Spokeo v. Robins,*[1] for a plaintiff to

11  maintain Article III standing he must have suffered a concrete injury even in the

12  context of a statutory violation.  Given this requirement, a plaintiff cannot simply

13  allege a procedural violation without any connection to a concrete harm and satisfy the

14  injury in fact requirement of Article II of the Constitution.

15       As this court noted in *Romero v. Dep't. Stores Nat'l Bank,*[2] the bare assertion of

16  Defendant's procedural violation of the Telephone Consumer Protection Act ("TCPA")

17  by making one call via a personal cell phone does <u>not</u> satisfy the fundamental

18  requirement under Article III of the Constitution to plead a concrete injury in fact.

19  Furthermore, Ewing's failure to plead facts sufficient to connect his claimed injuries

20  with a specific TCPA violation eliminates any possibility of his ability to maintain

21  Article III standing.  Without the requisite Article III standing, this Court must dismiss

22  Ewing's putative class action with prejudice because it lacks subject matter jurisdiction

23  as required by Federal Rule of Civil Procedure 12(b)(1).

24

25

26  _____

27  [1] 136 S.Ct. 1540(2016).

28  [2] 2016 U.S. Dist. LEXIS 110889 (S.D. Cal. Aug. 5, 2016).

**MEMORANDUM OF POINTS AND AUTHORITIES BY DEFENDANT
IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

## II.     BACKGROUND

Ewing has become notorious in the TCPA world as a serial litigant who has filed dozens upon dozens of TCPA cases in the past few years. Mark Pollard is an individual who until June 1, 2018 had run his own General Contracting business for over 23 years. Due to complications stemming from heart failure (cardiomyopathy), Pollard shut down his business in June of 2018. In an effort to provide for his family Pollard turned to a less stressful career in life insurance, and obtained his license in November of 2018. On or about January 28, 2019 Pollard built a website (elevationinsurancegroup.com). On or about February 2, 2019 before Pollard could make any sales, he was diagnosed with thyroid cancer. During the initial surgery for thyroidectomy Pollard's laryngeal nerve was severed causing Pollard to lose his voice. On or about April 24, 2019 Pollard was approached by an outsourcing company Virtual Staffing Outsourcing (VSO) based in the Philippines in an effort to provide their sourcing services. VSO was responsible for their sourcing, vetting, and adherence of all applicable U.S. Laws in conducting their business and hiring their employees.

### A. History of Call Between Ewing and Defendant

On or about May 7, 2019 VSO's employee Grace, emailed Pollard a scheduled appointment with Tony Starc contact number 619-719-9640 and email address seoresearchdata@gmail.com(Exhibit A). VSO had conducted their screening with Tony Starc for interest. Starc was receptive and engaging and gave Grace consent for Pollard to contact him either on his cell phone 619-719-9640 or via his email seoresearchdata@gmail.com (Exhibit B). On or about May 7, 2019 at 10:31AM Pollard, through the use of his personal cell phone, manually placed one phone call to Tony Starc to confirm the appointment. Pollard did this by dialing his personal cell phone one time to 619-719-9640 (Exhibit C). The person answering the call identified himself as Tony Starc. The call duration was 18 minutes. At all times during the first

15 minutes of conversation Pollard was under the belief that he was speaking with Tony Starc. Starc was engaging and inquisitive about Pollard's business and not once did he state that his number was on the Do Not Call Registry (DNC). After Starc obtained Pollard's business information and 15 minutes into the call, Starc revealed to Pollard that indeed his name was "Anton", now known as Anton Ewing. Ewing became aggressive and hostile and vociferously stated "I am going to shut your company down." He proceeded to quote legalese codes and stated "I am going to sue you, I'm gonna shut you down." Pollard apologized for the phone call but Ewing continued to berate him. Pollard advised Ewing that he was going to hang up and not continue this conversation. Ewing continued to rebuke Pollard. Pollard hung up the telephone. That same morning, May 7, 2019 at 10:56AM Ewing called Pollard. Pollard then stated "I am trying to support my family and if my apology is not sufficient then there is nothing else to say" and ended the call.

Again on May 7, 2019 at 12:45PM Ewing emailed Pollard an unfiled alleged complaint stating "You have been sued…"

The single call at issue was placed to Tony Starc, now known as Anton Ewing, cell phone with a Pollard's personal cell phone. No ATDS equipment was ever used. Pollard does not own, has no knowledge of, or ever owned or used ATDS equipment.

**B.    Ewing's Alleged Harm**

Ewing now comes before this Court and alleges that Defendant's single call on May 7, 2019, violates the TCPA and is grounds for an injunction and damages because:

1.    Allegedly Defendant called Ewing's cellular telephone using an ATDS (Compl., ¶6);

2.    Ewing alleges he received 5 calls from Pollard (Compl., ¶16);

3.    Ewings personal privacy and peace was invaded by Defendant (Compl. ¶16)

1  These are the only allegations of harm in the Complaint.  Further, there are no other

2  allegations of any concrete harm regarding the single call Plaintiff received - nor could

3  there be.

**III.    DISCUSSION**

**A.    Standard of Review**

Federal courts are courts of limited jurisdiction, and as such have an obligation

to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United*

*States*, 718F.2d 964, 965 (9th Cir. 1983). Because the issue of standing pertains to the

subject-matter jurisdiction of a federal court, motions raising lack of standing are

properly brought under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227

F.3d 1214, 1242 (9th Cir. 2000). The Plaintiff bears the burden of establishing he has

standing to bring the claims asserted. *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir.

1996); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546

F.3d 981, 984 (9th Cir. 2008) ("The party asserting jurisdiction bears the burden of

establishing subject matter jurisdiction on a motion to dismiss for lack of subject

matter jurisdiction.")

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe*

*Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack,

the challenger asserts that the allegations contained in a complaint are insufficient

on their face to invoke federal jurisdiction. By contrast, in a factual attack, the

challenger disputes the truth of the allegations that, by themselves, would otherwise

invoke federal jurisdiction." *Id.* Here, Pollard's challenge is facial because it

disputes whether Plaintiff has alleged harm sufficiently particularized to confer

Article III standing. To adjudicate a facial challenge, the Court assumes the truth of

Plaintiff's factual allegations, and draws all reasonable inferences in favor of

Plaintiff. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005); *Safe Air*

*for Everyone*, 373 F.3d at 1039.

1    Moreover, standing must be considered before proceeding to the merits of a

2    case because it is a threshold, jurisdictional issue. *Kerr-McGee Chemical Corp. v.*

3    *U.S. Dept. of Interior*, 709 F.2d 597, 600 (9th Cir. 1983); *Los Angeles Bar Ass'n v.*

4    *Eu*, 979 F.2d 697, 700 (9th Cir. 1992). Litigants seeking redress in a federal forum

5    must have the requisite standing that arises from an actual controversy and must be

6    "extant at all stages of review, not merely at the time the complaint is filed."

7    *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser*

8    *v. Newkirk*, 422 U.S. 395, 401 (1975)).

9    Essentially, courts must ensure that the parties before it have the requisite

10   standing to pursue their claims, despite the current state of litigation, and even if the

11   issue has not been previously raised. "Every federal . . . court has a special

12   obligation to satisfy itself not only of its own jurisdiction, but also that of the lower

13   courts in a cause under review, even though the parties are prepared to concede it"

14   *Arizonans for Official English*, 520 U.S. at 73 (internal citations omitted). *See also*

15   *Juidice v. Vail*, 430 U.S. 327, 331 (1977) ("Although raised by neither of the

16   parties, we are first obliged to examine the standing of appellees, as a matter of the

17   case-or-controversy requirement associated with Art. III, to seek injunctive relief in

18   the District Court.").

19

20   **B. Ewing Cannot Satisfy Article III Standing.**

21   The standing to sue doctrine arises from the case or controversy principles

22   developed from United States Supreme Court case law. The purpose behind the

23   "standing to sue" doctrine is to "limit the category of litigants empowered to

24   maintain a lawsuit in federal court to seek redress for a legal wrong." *See Spokeo,*

25   136 S.Ct. at 1547 (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). A plaintiff in

26   federal court must prove he has Article III standing. *Lewis v. Casey*, 518 U.S. 343,

27   357 (1996). "Article III, Section 2 of the United States Constitution restricts federal

28   court jurisdiction to resolving cases and controversies. Standing to sue or defend is

1    an aspect of the case or controversy requirement." *Arizonans for Official English*,

2    520 U.S. at 64; U.S. CONST. art. III, § 2, cl. 1.

3         Under this principle, standing consists of three elements. A plaintiff must

4    have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

5    conduct of the defendant, and (3) that is likely to be redressed by a favorable

6    judicial decision." *Arizonans for Official English*, 520 U.S. at 64 (citing *Lujan v.*

7    *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). It is Ewing's burden to prove

8    he has satisfied Article III Standing. *Lewis*, 518 U.S. at 357.

9         Ewing has not and cannot meet this burden in light of *Spokeo* and this

10   Court's own recent decision in *Romero*. Ewing under the alias "Tony Starc" requested

11   that Pollard contact him to his cell phone 619-719-9640 or by email to

12   seoresearchdata@gmail.com to offer further information on products.  After the one

13   call concluded, Pollard never again contacted Plaintiff Ewing.

14        Ewing now attempts to extrapolate that single, invited, call into a nationwide

15   TCPA lawsuit. Even a cursory reading of his class complaint reveals the utter lack of

16   individual or class harm, let alone any tracing of harm by a manually-made call. Other

17   than reciting often-used introductory language as to why Congress enacted the

18   TCPA, and its background regarding pre-recorded telemarketing calls, the

19   Complaint does nothing to show that Ewing was harmed by the single, invited, call he

20   received on May 7, 2019.

21

22        Nowhere in the factual background of the Complaint does Ewing articulate,

23   state, infer, or complain of any actionable harm he suffered as a result of this call,

24   absent the suggestion that he was annoyed by the call. Even assuming, *arguendo*,

25   that Ewing could plead that he suffered the exact harm Congress sought to

26   eliminate with the TCPA (*e.g.*, unwanted calls to Ewing's cell phone and violation

27   of privacy), that allegation would only address the particular, not the concrete,

28   component of an injury in fact analysis. *Spokeo's* holding is clear: a mere statutory

1   violation divorced from some concrete injury caused by that statutory violation is

2   not sufficient to confer Article III standing and injury in fact. 136 S.Ct. 1540

3   (2016).

4       As this Court correctly pointed out in its *Romero* decision, the TCPA treats

5   every single call as an independent violation, as opposed to basing a violation based on

6   quantity or excessive calls for a reason:

8           Congress's finding that the proliferation of unwanted calls from
            telemarketers causes harm does not mean that the receipt of one
9           telephone call that was dialed using an ATDS results in concrete harm.
            In other words, regardless of Congress's reasons for enacting the
10          TCPA, one singular call, viewed in isolation and without consideration
11          of the purpose of the call, does not cause any injury that is traceable to
            the conduct for which the TCPA created a private right of action,
12          namely the use of an ATDS to call a cell phone.
13

14   *Romero*, 2016 U.S. Dist. LEXIS 110889 at *18.

16       This reasoning is in harmony with *Spokeo* and dovetails precisely to the

17   concrete harm showing that must be made, and is why Ewing's Complaint is fatally

18   flawed. No amount of amendments can address the fundamental problem with his

19   claim. Ewing merely received one, invited, call—following up on contact that Ewing

20   himself /aka Tony Starc initiated. There is no allegation, nor could there be, that the

21   single follow-up call was an attempt to sell something, was telemarketing, or was the

22   result of a pattern of unwanted calls to Ewing by Defendant.

23       Moreover, given Ewing's extensive history of suing companies for TCPA

24   claims, it is hard to view the facts as pleaded as any real violation of the TCPA as

25   Congress intended the statute to be interpreted. The serial nature of Ewing's TCPA

26   filings demonstrates not an aversion to receiving calls, but rather a desire for these

27   calls to occur in order to leverage claims for statutory damages. *See Stoops v. Wells*

28   *Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016)

- 8 -

1  (granting summary judgment for defendant and finding that plaintiff lacked
2  constitutional standing because an interest in statutory damages cannot be the sole
3  injury to satisfy Article III requirements).

4      Even a charitable reading of Ewing's Complaint reveals that he was not
5  harmed by the single call placed. Instead, the Complaint is a contrivance brought by a
6  serial plaintiff seeking to enrich himself with statutory damages and class-wide claims
7  where no showing of any concrete harm tied to Defendant's conduct has been made.
8  This is precisely the issue that *Spokeo* and this Court in *Romero* addressed and that
9  compels a dismissal of these claims.

10 **IV.   CONCLUSION**

11      Ewing's complete lack of damages connecting his alleged injury to a
12 concrete injury in fact eliminates his ability to establish Article III standing to assert
13 his TCPA claim. As a result, Defendant is entitled to a dismissal with prejudice
14 of Plaintiff's Complaint according to Federal Rule of Civil Procedure 12(b)(1).

15

16

17

18 Dated: October 3, 2019

        Mark Pollard, Defendant

19

20

21

22

23

24

25

26

27

28

1

2

## CERTIFICATE OF CM/ECF SERVICE

3

4        The undersigned hereby certifies that a true and correct copy of the above and

5  foregoing document has been served on October 3, 2019, to all counsel of record who

6
   are deemed to have consented to electronic service via the Court's CM/ECF system per
7

8  Civil Local Rule 5.4. Any counsel of record who have not consented to electronic

9  service through the Court's CM/ECF system will be served by electronic mail, first

10
   class mail, facsimile, and/or overnight delivery.
11

12

13                                                Christina Pollard

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES BY DEFENDANT
IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Exhibit A



Elevation Insurance Group <info@elevationinsurancegroup.com>

# Grace Ann Acuzar assigned task Appointment with Tony Starc to you

**Grace Ann Acuzar** <noreply@podio.com>                    Tue, May 7, 2019 at 10:06 AM
Reply-To: 579251341.544a79c1@reply.podio.com
To: Mark Pollard <info@elevationinsurancegroup.com>



**Grace Ann Acuzar** assigned task Appointment with Tony Starc to you

**Details:**
email address: seoresearchdata@gmail.com

He wish to receive an email prior to the appointment to study the program. And along
with the email he wish to get informations like,Where we got his number. Also would
like to know where our physical office is located and Mark's official website.

 Go there now

✉ **Reply by Email** - Just hit reply to respond to this notification

If you wish to adjust your email settings, go here. If you want to turn off all email notifications from
Podio, go here (use with care!). You can also unsubscribe by sending a mail to info-
ya0622.63facb12@unsubscribe.podio.com. Questions? Contact Podio on support@podio.com.

Exhibit B

# Transcription of telephonic conversation between

### Grace with Virtual Staffing Outsourcing (VSO)  and Tony Starc (619) 719-9640

##### May 7, 2019

---

**START OF CALL:** 00:00

**TONY:**  00.00   Hello

**GRACE:**  00.03   Hello, this TONY?

**TONY:**  00.06   Yes, who's calling please?

**GRACE:** 00.07   Hi TONY, my name is GRACE, and my calling you from US Burial and cremation society, how are you today?

**TONY:**  00.15    I'm sorry, the what society?

**GRACE:**  00.17   I'm calling from US burial and cremation society, this call is just to let you know that we launched a brand new program it was last March when you launch it in California and the program is designed to cover 100% or the total um... expenses for funeral and cremation when the time comes are you between the ages of 40 to 80 years old, Tony?

**TONY:**   00.43   Yes

**GRACE:** 00.45    Aw, well, um... that's great, um...that means that you can fill this program and I will like you to know TONY that this program there are no issues with individuals with preexisting conditions  so that, this okay and um...I'd like to know if you'll be available probably tomorrow or the next day so that we can...um...give you a visit our licensed representative can give you a visit and he can explain to you all the information that you need to know...um you know, how the program works, it's benefits, and how much money can you save per the program and then ...um...of course from there he might be able to help you ...um... make some decisions as well....so um will you be available tomorrow?

**TONY:**  01.35   Yes

**GRACE:**  01.38   Okay, so tomorrow will be the 8th, and um...would it be okay in the morning? Are you going to be busy in the morning?

**TONY:**  01.47   umm...let me check...hold on

**GRACE:** 01.49   okay

**TONY:**  01.55   Morning's open

**GRACE:** 01.57   Okay, how .....(inaudible) what time in the morning? Will that work for you?

**TONY:** 02.01   Yes

**GRACE:** 02.03   Okay, there ...so...um...TONY this number where I reached you today but 619-719-9640 um...will that be the best contact number .

**TONY:** 02.20   I, I don't have any other phone.

**GRACE:** 02.23   okay, sure, so I'll put (inaudible) um so here's whats going to happen, our local representative or our licensed representative will come to your place....um, his name is Mark Pollard he'll give you a call before he comes and, before he come to your place just to let you know that he'll becoming

**TONY:** 02.42   Can you spell, can you spell his last name?

**GRACE:** 02.45   Sure...it's Pollard P like papa, and then O like Oscar, double L like Lima, A like Alpha, R like Romeo, and D like Delta...

**TONY:** 03.00   He's a license

**GRACE:** 03.00   ...and his first name is Mark.

**TONY:** 03.02   He's a licensed insurance agent?

**GRACE:** 03.04   Yes, he is

**TONY:** 03.06   Is Mark - M A R C or M A R K?

**GRACE:** 03.09   It's M A R K, his first name is M A R K, and then um....he'll be the one, of course he's the only one that is licensed to do um...this you know give you all the information that you need to know, there no obligation for this Tony...um...he'll help you understand this program first and of course it's still going to be....he's gonna decide if the program will work for you, alright?

**TONY:** 03.35   Yea, do you have um, a phone number for him?

**GRACE:** 03.40   Sure I do have one just let me get your phone number.... here is his phone number you got a pen and paper right there?

**TONY:** 03.50   yea

**GRACE:** 03.52   okay, his number is 619-720-3886

**TONY:** 04.06   that's the number that you're calling me on, hello?

**GRACE:** 04.12   yes, that will be the same number that he'll give you call with

**TONY:** 04.16   oh, and you work for Mark?

**GRACE:** 04.18   yes, I do.  I do set up Mark's appointments and if you're not comfortable with that number you can use other number that he's using 760-877-1277

**TONY:** 04.39   okay

**GRACE:** 04.41   uhm…so…he's going tobe the one to come to your place.  Not me, but my name is Grace, I work for Mark and um…Tony, let me just ask, are you a veteran?

**TONY:** 04.52   yes

**GRACE:** 04.53   okay, sounds good, that's good.  and um, just to know your preferences when the time comes would you like to be cremated or buried?

**TONY:** 05.06   I don't …I don't know yet

**GRACE:** 05.09   okay, he'll help you out as well for those kind of, you know decision making but….he'll come to your place um….tomorrow, that's the 8th of May that is going to be between um afternoon and the morning

**TONY:** 05.22   ahm

**GRACE:** 05.23   so he'll give you a call before he… he, um…reach your place, of course just to make sure that you are there and that he won't be, you know, he won't be surprised, (inaudible) so if you would like we can send you an email prior to the appointment if you have an email address you can give it to us and then we can send you some information as well in your email so that you'll be able to read all of those um information in the program before he comes and visit you

**TONY:** 05.49   that'll be great , I would appreciate that, can I give you my email address?

**GRACE:** 05.53   yes, please

**TONY:** 05.55   S as in Sam, E as in Edward, O as in Oscar, researchdata@gmail.com, so seoresearchdata@gmail.com

**GRACE:** 06.14   at gmail.com, thank you for that, I captured the email address.  So I'll give him your email address so he can send you all um the information that you need to know prior to the appointment and then of course if you have any questions just ask him all the questions that you have, alright?

**TONY:** 06.30   I have a quick question for you GRACE…How did Mark get my phone number?

**GRACE:** 06.36   well, most of the phone numbers that we are getting is um from the inquiries before that we got so do you remember having some inquiries before for some final expenses or insurance?

**TONY:** 06.50   Inquiries like how? In what, what manner or method?

**GRACE:** 06.55   because all of these numbers  that we are getting are from of those people who have inquired about insurance and final expenses so that's how we get the numbers.

**TONY:** 07.06   but I don't know how how do you, how do you, from what methods by filling out a postcard at the mall....? Or how, how, do you have any idea?

**GRACE:** 07.19   well actually that number is not coming from these so if you would like you could ask Mark on that.  I'll um (inaudible) that information that um of course you would like to know how it happened so I'll get him that information that (inaudible) give you a call prior to the appointment so he'll give you the exact details

**TONY:** 07.41   Okay, and does Mark have a website?

**GRACE:** 07.44   yes, he has...well, I can give you his email address

**TONY:** 07.48   okay, go ahead

**GRACE:** 07.51   ahm...his email address is V S O cuz it's V as in Victor,  and then S like Sara, O like Oscar, then  agent

**TONY:** 08.05   Okay

**GRACE:** 08.06   all in one word, dot Pollard which is his last name

**TONY:** 08.10   mhm

**GRACE:** 08.12   at gmail dot com

**TONY:** 08.14   okay

**GRACE:** 08.17   so I'll give him all the questions

**TONY:** 08.18   (inaudible: talk over each other)

**TONY:** 08.19   company web site more

**GRACE:** 08.22   well I'm not allowed to to give that um

**TONY:** 08.25   oh that's okay

**GRACE:** 08.26   ...on his behalf...

**TONY/GRACE:** 08.27    (both laughing)

**GRACE:** 08.27   yes, um...I'll give him that information that it will be a great help for you so that (inaudible)

**TONY:** 08.33   where are you guys located? Are you located....it must be San Diego, yea?

**GRACE:** 08.37   yes, we are

**TONY/GRACE:**  (inaudible)

**GRACE:**  08.41   he's the one doing the business...um....and

**TONY**   08.44   right

**GRACE:** 08.45   and I get (inaudible laughing)

**TONY:** 08.47   Right, do you have ah office address? Do you have an office address?

**GRACE:** 08.55   um, no apologies but I'm not allowed to you know um answer those questions but like....

**TONY:** 09.00   ahh  that's okay

(inaudible)

**TONY:** 09.04   Is somebody else talking to you?  Is somebody else talking to you?

**GRACE:** 09.06   no...um...alone right now but I'll give him all those information and those questions that
you've asked me prior to the appointment so everything is perfect before he come by,
okay?

**TONY:** 09.17   okay, there's one more last question and I'll let you go.

**GRACE:** 09.19   sure

**TONY:** 09.20   um...did you record this call?

**GRACE:** 09.22   no, I don't  (inaudible)

**TONY:** 09.27   okay, thanks Grace.

**GRACE:** 09.29   thank you, Tony, um expect will be calling you um tomorrow before he go and visit your
place and of course the email will be sent to you right away.

**TONY:** 09.37   oh, perfect, thank you so much

**GRACE:** 09.39   thank you for your time Tony

**TONY:** 09.40   okay, bye bye

**GRACE:** 09.42   goodbye


**END OF CALL**   09:43

Exhibit C

Wireless  Residential  Business          Valley_Cente..., CA  Español  Contact Us  Store Locator  🛒 Cart  **Sign Out**

# verizon√  **Shop**   **Support**   **My Verizon**          I am looking for          🔍

My Verizon Home   My Billing   My Usage   My Devices   My Plan & Services   My Profile

# My Usage

**Current billing cycle:**          **View previous cycles**

**10**   days remaining.
Ends on 05/27/2019

## Choose a line:

<         

**MARK  POLLARD**

**760-877-1277**

# Here's a look at your minutes for this month.

You have Unlimited minutes

| Device | Anytime ❓ | Nights & Weekends ❓ | Mobile to Mobile ❓ | Total |
|---|---|---|---|---|
| **MARK POLLARD** 760-877-1277 | | | | |

Usage is Estimated.                     **468 minutes used** out of Unlimited

# Current call log for: 7608771277          All ▾     Download as a spreadsheet

| Date ▾ | Time ⇕ | Destination ⇕ | Number ⇕ | Call type ⇕ | Minutes ⇕ |
|---|---|---|---|---|---|
| 05/17/2019 | 9:55 AM | TOLL-FREE | -1900 | | 9 |

| Date ▾ | Time ♦ | Destination ♦ | Number ♦ | Call type ♦ | Minutes ♦ |
|---|---|---|---|---|---|
| 05/09/2019 | 11:52 AM | CINCINNATI | -3111 | M2M Calling Peak | 4 |
| 05/09/2019 | 11:45 AM | SAN MARCOS | 5535 | Peak | 3 |
| 05/09/2019 | 11:44 AM | SAN MARCOS | -5535 | Peak | 1 |
| 05/09/2019 | 10:21 AM | ESCONDIDO | -0611 | Peak | 3 |
| 05/09/2019 | 10:01 AM | EL CAJON | -0761 | Peak | 4 |
| 05/09/2019 | 8:21 AM | INCOMING | 8163 | M2M Calling Peak | 2 |
| 05/09/2019 | 7:33 AM | INCOMING | -8163 | M2M Calling Peak | 2 |
| 05/08/2019 | 1:11 PM | INCOMING | -4391 | Peak | 2 |
| 05/08/2019 | 12:41 PM | TOLL-FREE | -5521 | Peak | 6 |
| 05/08/2019 | 12:38 PM | TOLL-FREE | -5521 | Peak | 3 |
| 05/08/2019 | 9:39 AM | SAN DIEGO | 6585 | Peak | 1 |
| 05/07/2019 | 3:02 PM | TOLL-FREE | -3361 | Peak | 2 |
| 05/07/2019 | 3:01 PM | TOLL-FREE | 3361 | Peak | 1 |
| 05/07/2019 | 2:15 PM | INCOMING | 7547 | Peak | 2 |
| 05/07/2019 | 12:09 PM | INCOMING | -3387 | Peak | 2 |
| 05/07/2019 | 10:56 AM | INCOMING | 619-719-9640 | Peak | 2 |
| 05/07/2019 | 10:31 AM | SAN DIEGO | 619-719-9640 | Peak | 18 |
| 05/07/2019 | 10:24 AM | INCOMING | -1014 | Peak | 2 |
| 05/07/2019 | 9:59 AM | WALNUT CRK | -1014 | Peak | 2 |
| 05/07/2019 | 9:58 AM | MONTEBELLO | -1181 | Peak | 1 |
| 05/07/2019 | 9:54 AM | PHELAN | -4290 | Peak | 1 |

Verizon Wireless - It's the Network

| Date ▾ | Time ⬥ | Destination ⬥ | Number ⬥ | Call type ⬥ | Minutes ⬥ |
|---|---|---|---|---|---|
| 05/07/2019 | 9:49 AM | VM DEPOSIT | -5167 | Peak | 2 |
| 05/06/2019 | 3:14 PM | TOLL-FREE | -3387 | Peak | 1 |
| 05/06/2019 | 2:48 PM | LSAN DA 02 | -6391 | Peak | 2 |
| 05/06/2019 | 1:01 PM | SAN DIEGO | -5167 | Peak | 2 |
| 05/06/2019 | 10:26 AM | POWAY | -7771 | M2M Calling Peak | 2 |
| 05/06/2019 | 10:25 AM | VM DEPOSIT | -3338 | Peak | 1 |
| 05/06/2019 | 10:24 AM | VM DEPOSIT | 7157 | M2M Calling Peak | 1 |
| 05/06/2019 | 10:20 AM | POWAY | -2889 | Peak | 1 |
| 05/06/2019 | 8:12 AM | VM DEPOSIT | -5167 | Peak | 2 |
| 05/04/2019 | 4:15 PM | VM DEPOSIT | -5167 | Off Peak | 1 |
| 05/04/2019 | 12:14 PM | INCOMING | -3338 | Off Peak | 1 |
| 05/04/2019 | 9:48 AM | VM DEPOSIT | 5167 | Off Peak | 1 |
| 05/04/2019 | 9:24 AM | VM DEPOSIT | -5167 | Off Peak | 2 |
| 05/04/2019 | 9:11 AM | VM DEPOSIT | -3338 | Off Peak | 1 |
| 05/04/2019 | 9:02 AM | VM DEPOSIT | -3338 | Off Peak | 2 |
| 05/03/2019 | 8:58 AM | INCOMING | -2530 | Peak | 14 |
| 05/03/2019 | 8:51 AM | RNCHOBRNDO | 2475 | Peak | 5 |
| 05/03/2019 | 8:46 AM | VM DEPOSIT | 2530 | Peak | 1 |
| 05/03/2019 | 6:24 AM | CHULAVISTA | -8163 | M2M Calling Peak | 1 |
| 05/02/2019 | 2:29 PM | INCOMING | -2250 | Peak | 3 |
| 05/02/2019 | 10:32 AM | BEND | -1681 | Peak | 2 |