1  Anton Ewing (*pro se*)
   3077 Clairemont Drive #372
2  San Diego, CA 92117
   anton@antonewing.com.
3  (619)719-9640

4  Plaintiff

5

6

7

8          THE UNITED STATES FEDERAL DISTRICT COURT

9

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12

13  Anton Ewing, an individual,          )  Civil Case No.: 19CV0855 CAB BGS
                                         )
14              Plaintiff,               )  **NOTICE OF PLAINTIFF'S**
                                         )  **MOTION FOR LEAVE TO FILE**
15                                       )  **SECOND AMENDED COMPLAINT**
        vs.                              )
16                                       )
17  Mark Pollard, an individual;         )  **Date: January 16, 2020**
                                         )  **Time: NA**
18                                       )  **Courtroom: 4th Floor**
                                         )
19              Defendant.               )  [*The Honorable District Judge Cathy A Bencivengo*]
                                         )
20                                       )  **PER CHAMBERS RULES, NO ORAL**
                                         )  **ARGUMENT UNLESS SEPARATELY**
21                                       )  **ORDERED BY THE COURT**
                                         )
22  ─────────────────────────────────────

23
        Please take notice the Plaintiff Anton Ewing will, and hereby does, moves
24
   this Honorable Court for leave to file a Second Amended Complaint.  The motion
25
   will be based on this Notice, the Motion, and the attached Memorandum of Points

   and Authorities as well as any declarations, exhibits and oral testimony the Court

PLAINTIFF'S MOTION FOR LEAVE TO FILE SAC  - 1

19CV0855



1  may allow.  The hearing is set for January 16, 2020 in the Honorable Judge Cathy

2

3  A. Bencivengo's courtroom at the 4th Floor at 221 West Broadway, San Diego, CA

4  92101.  No oral argument will be held unless ordered by the Court.  Pollard's reply

5  in the MSJ is not due until January 27, 2020.

6

7  Dated:  December 12, 2019

8

9                                                                          Anton Ewing,
                                                                            Plaintiff
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Table of Contents**

MEMORADUM OF POINTS AND AUTHORITIES ........................................5

POLLARD IS NOT UNDULY PREJUDICED AND NOT UNDUE DELAY .6

PLAINTIFF IS MOVING IN GOOD FAITH .....................................................6

AMENDMENT IS NOT FUTILE BUT CLARIFYING ...................................7

CONCLUSION ...................................................................................................8

19CV0855

Anton Ewing (*pro se – not an attorney*)
3077 Clairemont Drive #372
San Diego, CA 92117
anton@antonewing.com.
(619)719-9640

Plaintiff *in propria persona*

## THE UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anton Ewing, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>Mark Pollard, an individual;<br><br>Defendant. | Civil Case No.: 19CV0855 CAB BGS<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date: January 16, 2020**<br>**Time: NA**<br>**Courtroom: 4th Floor**<br><br>**No oral argument unless ordered** |

Plaintiff Anton Ewing ("Plaintiff"), pursuant to Rule 15(a)(2), hereby moves his Honorable Court for leave to file the attached Second Amended Complaint as follows:

1.  Plaintiff already used up his one free opportunity to file an amended complaint in order to moot Defendant's motion to dismiss.

2. Therefore, pursuant to Rule 15(a)(2), Federal Rules of Civil Procedure, Plaintiff respectfully requests the District Court to grant him permission to file the attached Second Amended Complaint (SAC) in order to correct and clarify a misunderstanding by Defendant about the calls being sued for. *See* Exhibit A.

3. Defendant has misread and misunderstood that he is being sued for both the recorded call from his employee Grace on May 7, 2019 as well as the calls from Pollard thereafter. The SAC makes that point very clear now.

4. Plaintiff is mindful that the District Court has converted Pollard's second motion to dismiss into a motion for summary judgment. This SAC will help all parties properly focus on the true issues. That is, vicarious liability and direct liability for TCPA violations as well as CIPA violations.

5. While the FAC did in fact allege and discuss vicarious liability, Defendant appears to have misinterpreted a poor worded sentence drafted by a non-lawyer, pro per Plaintiff.

## MEMORADUM OF POINTS AND AUTHORITIES

6. Typically, courts must give wide latitude to plaintiffs[1] wishing to amend their complaints, although such latitude may be curbed in consideration of the following factors: (1) the opposing party would be unduly prejudiced if the plaintiff were permitted to amend the complaint; (2) the plaintiff is moving in

---

[1] And more so to *pro per* plaintiffs who do not have attorneys.

19CV0855

bad faith; (3) the proposed amendment stems from undue delay; and (4) amending the complaint would be futile. See *Cafasso, U.S. ex. rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). The factors are not weighted equally. See *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The Court's determination should be made "with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). *Cathy v. McCain*, No. 16-CV-1256-DMS(WVG), 2016 U.S. Dist. LEXIS 171538, at *7-8 (S.D. Cal. Sep. 29, 2016)

### POLLARD IS NOT UNDULY PREJUDICED AND NOT UNDUE DELAY

7. Since the FAC actually puts Pollard on notice of his vicarious liability for the Grace call on May 7, 2019, and very little time has lapse if we exclude the evading service issues that Pollard created, then he is not unduly prejudiced.

### PLAINTIFF IS MOVING IN GOOD FAITH

8. This motion is made in good faith. Plaintiff is only correcting a poorly worded sentence in the FAC that Defendant has misunderstood. Pollard is vicariously liable for the Grace call both under the TCPA and under CIPA. Pollard has admitted that he hired Grace in the Philippines to make calls and he has admitted that he himself called Plaintiff also. Moreover, Defendant has not alleged that Plaintiff invited or requested a call from Grace (which would never have occurred anyway). This is a legitimate and fact based case. In fact, there

PLAINTIFF'S MOTION FOR LEAVE TO FILE SAC - 6

19CV0855

is not genuine issue of fact as to whether Grace called Plaintiff and not genuine issue of fact as to whether Pollard called Plaintiff. Pollard mistakenly thinks that an illegal call from Grace can result in consent for Pollard to subsequently call. It can not. Telemarketers must be found out and discovered so that they can be brought to justice for violating 47 USC §501 and §227. A poisoned tree bears poisonous fruit.

## AMENDMENT IS NOT FUTILE BUT CLARIFYING

9. Proposed amendments are considered futile when they are "'either duplicative of existing claims or patently frivolous.'" *Murray v. Schriro*, 745 F.3d 984, 1015 (9th Cir. 2014) (quoting *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995)). Here; however, the SAC amendments are in fact making the issue of vicarious liability more clear and exactly. As well, Plaintiff has enhanced the language that Pollard was misreading and made is explicit that Ewing is suing for both the call from Grace and the calls from Pollard.

10. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although Rule 15(a) gives the trial court discretion over this matter, [the Ninth Circuit has] repeatedly stressed that the court must remain guided by 'the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Leave to amend should be granted more liberally to pro se

19CV0855

plaintiffs. See *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003). *Brown v. Deputy #1*, No. 12-CV-1938-GPC (BGS), 2013 U.S. Dist. LEXIS 145778, at *10-11 (S.D. Cal. June 24, 2013).

## CONCLUSION

11. Wherefore, Plaintiff Ewing hereby respectfully moves this Honorable District Court to grant him leave to file the attached Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) in the interests of justice.

Dated:  December 12, 2019

Anton Ewing,
Plaintiff

19CV0855

**Cases**

*Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995) ................................................ 7

*Brown v. Deputy #1*, No. 12-CV-1938-GPC (BGS), 2013 U.S. Dist. LEXIS

  145778, at *10-11 (S.D. Cal. June 24, 2013) ........................................................ 8

*Cafasso, U.S. ex. rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th

  Cir. 2011) .................................................................................................................. 6

*Cathy v. McCain*, No. 16-CV-1256-DMS(WVG), 2016 U.S. Dist. LEXIS 171538,

  at *7-8 (S.D. Cal. Sep. 29, 2016) ............................................................................ 6

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) ..................... 6

*Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) .......................... 6

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ............................................. 7

*Murray v. Schriro*, 745 F.3d 984, 1015 (9th Cir. 2014) .......................................... 7

*Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ........................................... 8

## PROOF OF SERVICE

I, Anton Ewing, am over 18, a pro per plaintiff in this matter. I have filed this MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT and had it served on Defendant as follows:

**3:19-cv-0855 CAB BGS**

**Notice has been mailed to:**

I have also emailed a copy of this document to Defendant directly at the email address he uses to communicate with me at:

info@elevationinsurancegroup.com

Additionally I mailed this pleading, first class postage prepaid, to:

Mark Pollard, in pro per
15055 Kensal Court
Valley Center, CA 92082

All ECF users in this case have been served with a true and accurate copy via email.

I swear under penalty of perjury that the above was served as stated.

Dated:  December 12, 2019

/S/ Anton Ewing
Anton Ewing

19CV0855

# Exhibit A

Anton Ewing (*pro se – not an attorney*)
3077 Clairemont Drive #372
San Diego, CA 92117
anton@antonewing.com.
(619)719-9640

Plaintiff *in propria persona*

# THE UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anton Ewing, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>Mark Pollard, an individual;<br><br>Defendant. | Civil Case No.: 19-CV-0855 CAB BGS<br><br>**SECOND AMENEDED COMPLAINT**<br><br><br><br>**TCPA 47 USC §227(b)(1)(A)**<br><br>**TCPA 47 USC §227(c)(5)**<br><br>**PC §6327, §637.2** |

Plaintiff Anton Ewing ("Plaintiff"), hereby files his Second Amended

Complaint with permission of the Court and Plaintiff now complains against

Defendant Mark Pollard ("Pollard") and alleges as follows:

## I.    INTRODUCTION

1.    Plaintiff Anton Ewing was called by "Grace" from 619-720-3886 on May 7,

19CV0855

2019 at approximately 9:25 AM to Ewing's DNC registered cellular phone at 619-719-9640.  Grace works for Defendant Mark Pollard.  Grace admitted that she was instructed by Defendant to call Plaintiff.  Pollard controls and controlled Grace as his agent.  Pollard is vicariously liable for the illegal telemarketing acts of his controlled agent Grace.  Plaintiff is suing Pollard for the calls that Pollard made to Ewing without permission nor valid consent and for the call from Grace to Ewing.

2.      Pollard ordered Grace to illegally record the above telemarketing call in violation of California Penal Code sections 637.2 and 632.7.

3.      "The district court [Judge Bencivengo] erred in concluding that *Romero* lacked standing under Article III to bring a TCPA claim. The district court did not have the benefit of *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), in which we held that "a violation of the TCPA is a concrete, de facto injury." Id. at 1043. Romero has shown that this concrete harm is fairly traceable to the Banks' challenged conduct. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)." *Romero v. Dep't Stores Nat'l Bank*, 725 F. App'x 537, 539 (9th Cir. 2018)

4.      Pollard is liable for the calls that he ordered Virtual Staffing Outsource (VSO) from the Philippines (Grace's fictitious business) to make on his behalf to Plaintiff in violation of the TCPA.

5.      Pollard admitted at ECF No. 19, PageID.210, that "Grace" from VSO called

Plaintiff on May 7, 2019 on behalf of Pollard and at Pollard's direction.

6.     Pollard ordered Grace at VSO to illegally record the call to Plaintiff and had it both transcribed and submitted as an exhibit at PageID.221.  Said recording constitutes a criminal act in violation of PC §632, §632.7 and §637.2 for which Pollard is civilly liable.

7.     At nine minutes into the call from Grace, Ewing asked her if she recorded the call and she stated "*no, I don't.*"  See PageID.225 at ECF No. 19.  That was obviously a lie because Pollard had that call transcribed.  Pollard ordered her to record the calls and instructed her to lie about it when asked.  Pollard controlled every aspect of Grace's employment.

8.     The 9th Circuit, in *Gomez,* and the US Supreme Court upheld, the fact that Pollard is vicariously liable for the acts of his agents for violating the TCPA.

9.     An illegal telemarketing call from VSO does not and cannot afford any subsequent caller, like Pollard, consent to call.  Pollard's calls were the fruit of the poisonous tree.  VSO's alleged obtaining of fake "consent" is not express written consent required under the TCPA as promulgated by the FTC and FCC.

10.    The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone through the use of an ATDS is expressly alleged against Defendant Mark Pollard.

11.    Mark Pollard has been illegally calling Mr. Ewing, without his consent, with

19CV0855

autodialed and prerecorded calls ("robocalls") as well as "live-transfer" calls using an ATDS.  "Grace" is a direct employee of Pollard and received a W-2 from Pollard for sales commissions.  Grace confessed to this on the phone.  Mr. Ewing expressly told Mark Pollard and Grace to stop these illegal calls, but since then, Defendant Mark Pollard and its hired and controlled lead agents, have robocalled Plaintiff several more times.  Mr. Ewing brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in hopes that an injunction and damages will encourage Mark Pollard, to change their ways.  To be clear, Plaintiff is suing Pollard for the directly dialed calls as well as the call he ordered Grace to make on May 7, 2019.  There were other calls through lead generators but this lawsuit is for the direct autodialed calls from Grace and Pollard.

## II. PARTIES

12.     Plaintiff Anton Ewing is a citizen of California who conducts business in California, in this District.

13.     Defendant Mark Pollard is registered in and doing business in California including San Diego County as a life insurance salesman.

## III. JURISDICTION AND VENUE

14.     This Court has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This

Court has supplemental subject matter jurisdiction over the Plaintiffs' claim arising under California's Invasion of Privacy Act[1], Penal Code §637.2, §632.7 because those claims:

      a.  arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff;

      b.  adds little complexity to the case; and

      c.  relies on the same nucleus of facts, so it's unlikely to predominate over the TCPA claims.

15.  This Court has personal jurisdiction over Mark Pollard because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, Mark Pollard made illegal telemarketing robocalls to Mr. Ewing, while he was in California.  Mark Pollard has also subjected themselves to personal jurisdiction in California because they are running and abetting said criminal operation.  It is a crime to violate 47 USC §501 by violating 47 USC §227(b).  Mark Pollard and GRACE, through their dba's and agents, initiated the primary telemarketing calls to Plaintiff and then sold, transferred and provided the lead to Mark Pollard marketers and others within the organization in a knowingly illegal manner.  Pollard controlled Grace, told her what to say, how to do her job and what compensation she would be paid for the illegal telemarketing.  California

---

[1] Plaintiff will seek leave to amend the complaint after discovery to expressly allege CIPA violations.  This is only for notice purposes and to toll the statute of limitations.

Civil Code §1770(a)(22)(A) expressly prohibits the prerecorded messages that

GRACE and Mark Pollard and its agents sent to Plaintiff.  However, Plaintiff will

seek leave to amend the complaint after discovery.

16.     Plaintiff was called on cell phone of 619-719-9640 by Mark Pollard.

Plaintiff was called multiple times beginning on or about May 7, 2019, from 619-

720-3886, a number owned, used and controlled by Mark Pollard and Grace and its

agents, with a prerecorded message which then transferred to a live human.  The

initial part of the call was a pre-recorded message.  After many personal questions

were asked and answered, the call was transferred to another person who repeated

the same questions.   Defendant's employee asked if Plaintiff was interested in an

individual life insurance policy and a burial cost insurance policy.

17.     Plaintiff has expressly stated exactly what phone number Defendant used to

call Plaintiff, as well as an exact date of one of the calls, to which number the calls

were made, what was said on the call and that the call was made with an ATDS

and prerecorded message.  All of this meets the particularity requirements for a

cause of action.  Plaintiff's phone number is not a business phone.  Plaintiff's

phone is registered on www.donotcall.gov and was done so more than 31 days

prior to the first call.

18.     Mark Pollard does substantial business in this District.  Mark Pollard has

purposefully directed its activities to California and advertises that he does

19CV0855

business in California.

## IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

19.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

20.    The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

21.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

22.    Plaintiff Ewing alleges that Defendant Mark Pollard and its employee Grace placed repeated automated telephone calls to Plaintiff Ewing's cell phone (619-719-9640) from their phones and that the calls exhibited signs of being made with an Automated Telephone Dialing System, including repeated telemarketing calls to Plaintiff Ewing on May 7, 2019 and the presence of a pause or click (which is proven by the recording), which is commonly associated with an Automated Telephone Dialing System (ATDS).  Those allegations are true and are sufficient to establish the elements of a TCPA claim.  There was a long delay when the calls connected every time and Plaintiff heard a bubble popping sound right before the prerecorded message started.

PLAINTIFF'S SECOND AMENDED COMPLAINT - 7

19CV0855

**V. STANDING**

23.     The court must evaluate lack of statutory standing under the Rule 12(b)(6)

standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However,

because Plaintiff is proceeding pro se, his complaint "must be held to less stringent

standards than formal pleadings drafted by lawyers" and must be "liberally

construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming

standard reviEwing pro se complaints post-*Twombly*). The Ninth Circuit has

concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal*

remain the same and pro se pleadings must continue to be liberally construed.

*Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*,

612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458,

461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting

that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se

complaint liberally").

24.     Standing is proper under Article III of the Constitution of the United States

of America because Plaintiff's claims state:

    A. A valid injury in fact;

    B. which is traceable to the conduct of Defendant;

    C. and is likely to be redressed by a favorable judicial decision.  See,

        *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong**

25.    Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (*Id.).  For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiff was called on his cellular phone at least five times by Defendant.  In fact, Plaintiff expressly informed Defendant to cease and desist from all future telemarketing on the very first call.  Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry ( hereinafter, "DNC Registry").  As well, Plaintiff had no prior business relationship with Defendant prior to receiving the seriously harassing and annoying calls by Mark Pollard and by GRACE.   All of Plaintiff's injuries are concrete and de facto. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.  In the instant case, it was

19CV0855

Plaintiff's phone that was called and it was Plaintiff who answered the calls. It was Plaintiff's personal privacy and peace that was invaded by Defendant's persistent phone calls using an ATDS and a pre-recoded message, despite Plaintiff having no prior business relationship with Defendant and Plaintiff's attempt to avoid the damage by registering his number on the DNC Registry.

**The "Traceable to the Conduct of Defendant" Prong**

26.     The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that their injury is traceable to the conduct of Defendant. In the instant case, this prong is met by the fact that the calls to Plaintiff's cellular phone and home phone (land line) were placed either by Defendant directly, or by Defendant's agent at the express direction and control of Defendant.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten factor test from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

27.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically

19CV0855

redress the financial damages suffered by Plaintiff. Furthermore, Plaintiff's

Prayers for Relief request injunctive relief to restrain Defendant from the alleged

abusive practices in the future. The award of monetary damages and the order for

injunctive relief redress the injuries of the past and prevent further injury in the

future. Because all standing requirements of Article III of the U.S. Constitution

have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff

has standing to sue Defendant on the stated claims.

28.     "…[C]ourts in the Ninth Circuit have held that "allegations of nuisance and

invasions of privacy in TCPA actions are concrete" injuries that establish standing.

See *Mbazomo v. ETourandtravel, Inc*., 16-CV-2229-SB, 2016 U.S. Dist. LEXIS

170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016). In *Mbazamo*, the court

held that a violation of the TCPA represents a concrete injury because "[t]he

history of sustaining claims against both unwelcome intrusion into a plaintiff's

seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have]

traditionally been regarded as providing a basis for a lawsuit.'" *Mbazomo*, 2016

U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at

1549-50). The court declined to follow Romero, explaining that Romero

"improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A

plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged

19CV0855

harms suffered." Id. *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at \*7-8.

29.     "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560).  The Supreme Court noted that concreteness is quite distinct from particularization. *Id*. An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id*. In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id*. However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id*. at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id*. at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at \*9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at

19CV0855

1549.  In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id*.

30.    Here, Plaintiff alleges that Defendant Mark Pollard and Grace contacted him using a "telephone dialing system."  This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, each of the calls are available to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiff personally and they advertise Defendant Pollard's product. Third, Plaintiff declares that he has never heard of Defendant Pollard, visited any location operated by said Defendant prior to the harassing and annoying calls, nor provided his cellular telephone numbers to said Defendant or consented to receive calls from Defendant.  Plaintiff also has had no prior business relationship with Defendant. Plaintiff had no reason to be in contact with Defendant Pollard nor has he ever purchased any kind of product or service. Plaintiff's allegations are sufficient to establish that Defendant used ATDS in sending their prerecorded solicitation messages.  Plaintiff already has life insurance in place and has been so insured for the last ten years.

31.    In Plaintiff's case, the allegations establish that he did not give prior express consent.  He declared that he was "the regular user and subscriber to the cellular telephone number at issue."  He also declared that he has "never heard of

19CV0855

[Defendant], visited any location operated by [Defendant], provided [his] cellular telephone number to [Defendant] or consented to receive text messages from [Defendant]."  As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that he did not give prior express consent authorizing Defendant to send the prerecorded messages.

## VI. FACTUAL ALLEGATIONS

### A. Mark Pollard

32.    One of Mark Pollard's strategies for marketing its services is placing telemarketing robocalls to those who have not consented to receive such solicitations, including Plaintiff.  Pollard stated that he purchased Plaintiff's number from "Sales Genie."  Pollard also called from 760-877-1277.

33.    Mark Pollard uses equipment that has the capacity to store or produce random or sequential telephone numbers to be called and that includes autodialers and predictive dialers (each an "automatic telephone dialing system" or "ATDS").

34.    A third party sold leads to Mark Pollard and GRACE and is the marketing agent for Mark Pollard.  GRACE knowingly advertises through Mark Pollard.

### B. Plaintiff

35.    Plaintiff Anton Ewing is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

### C. Telephone numbers 619-719-9640

36.     A phone number beginning 619-719-9640 is registered to Mr. Ewing.

37.     619-719-9640 is on the National Do Not Call Registry.

38.     Mr. Ewing answers calls made to 619-719-9640.

39.     Mr. Ewing pays the phone bills for 619-719-9640.

**D. MARK POLLARD's Illegal Telemarketing Robocalls to Plaintiff**

40.     On May 7, 2019, a call to 619-719-9640, which is Mr. Ewing's cellular telephone, caused his cell phone to ring. Mr. Ewing picked up. The person on the other end wasn't anyone Mr. Ewing knew.  In fact, it wasn't a person at all; it was a prerecorded voice. The voice advertised life insurance type services from Mark Pollard and then Grace came onto the phone.  This is when Pollard started the recording.

41.     Plaintiff has never heard of Grace either and had not given her permission to call him, let alone with a telemarketing robocall. Mr. Ewing was surprised and frustrated to be interrupted by a prerecorded solicitation to a phone number that had long been on the National Do No Call Registry.

42.     Most of these robocalls used a prerecorded or artificial voice, while the rest were marked by an unnatural click or pause at the beginning—signaling to Mr. Ewing that the call was placed by an ATDS rather than manually dialed by a person.

43.     Three of Mark Pollard's telemarketing robocalls were made to Mr. Ewing while he was in California, in this District.

44.     Two of Mark Pollard's telemarketing robocalls were made to Mr. Ewing after Mark Pollard knew of his desire to never been solicited via telemarketing calls, which is publicly known in this District.

45.     Mr. Ewing repeatedly asked Mark Pollard to stop calling.

## VII. FIRST CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

46.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

47.     The foregoing acts and omissions of Mark Pollard and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to the cellular telephone number of Plaintiff without prior express written consent.

48.     The defendant in this matter is vicariously liable for the acts and actions of the lead source under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.  Discovery will reveal the name of the lead agent.  Pollard controlled the lead agent and had actual knowledge of the TCPA violations.  The three other TCPA lawsuits are evidence of this knowing and willful conduct.

49.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

50.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

51.   Plaintiff also seeks a permanent injunction prohibiting MARK POLLARD and its affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without prior express written consent of the called party.

## VIII. SECOND CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Telephones, 47 U.S.C. § 227(b)(1)(B))

52.   Mr. Ewing realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

53.   The foregoing acts and omissions of Mark Pollard and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency prerecorded telemarketing calls to the personal telephone 619-719-9640 number of Mr. Ewing without prior express written consent.

54.   Mr. Ewing is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

55.   Mr. Ewing is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

19CV0855

56.     Mr. Ewing also seeks a permanent injunction prohibiting Mark Pollard, and its affiliates and agents from making non-emergency prerecorded telemarketing calls to residential telephone numbers without prior express written consent of the called party.

## IX. THIRD CLAIM FOR RELIEF

**(Telemarketing Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))**

57.     Plaintiff reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

58.     The foregoing acts and omissions of Mark Pollard and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

59.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

60.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

61.     Plaintiff also seeks a permanent injunction prohibiting MARK POLLARD and its affiliates and agents from making telemarketing solicitations to residential

19CV0855

and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for this Honorable Court to enter judgment against Defendant Pollard as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Mark Pollard and GRACE violate the TCPA;

C. For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2);

D. $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every call;

E. For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

F. For an injunction prohibiting all Defendant from ever contacting Plaintiff ever again in any manner whatsoever, including spam texting, robodialing, and spam emailing;

G. $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

H. $1,500 for each violation of 47 CFR §64.1601(3) caller ID spoofing;

I. $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy

of written do not call policy;

J. $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of

business at beginning of call;

K. $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing

call to cellular phone;

L. $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

M. $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone

number on the DNC registry; and

N. For any other relief that the Court deems just and proper.

## XI. DEMAND FOR JURY

Plaintiff respectfully demands a trial by jury for all issues so triable.

Dated: December 12, 2019



Anton Ewing,
Plaintiff

19CV0855

# Exhibit A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON EWING, et al., | Case No.: 18cv1455-LAB (JLB) |
| Plaintiff, | **FINDINGS AND ADMONITION** |
| v. | **TO PLAINTIFF** |
| OASIS MEDIA, LLC, et al., | |
| Defendant. | |

After affording Plaintiffs Anton Ewing notice and an opportunity to be heard, the Court found that although he had been repeatedly ordered to obey Civil Local Rule 83.4 (concerning civility and professionalism), he repeatedly violated this rule. Ewing was discourteous and unprofessional when communicating with opposing parties and counsel; he disparaged their intelligence, ethics, and behavior; and he acted in a manner detrimental to the proper functioning of the judicial system.

Although Ewing has usually proceeded *pro se*, he is a frequent litigant, and represents to the Court that he has a J.D. from the University of Arizona College of Law. Despite his having legal training, the Court has repeatedly had to remind or order him to familiarize himself with various rules and to obey them. He is not in the same category as ordinary civil litigants whose unfamiliarity with applicable rules is more excusable. *See Doe v. City of Los Angeles*, 2013 WL 6019121, at

1

1   *15 (C.D. Cal., Nov. 13, 2013); *Phillips v. KIRO-TV, Inc.*, 817 F. Supp. 2d 1317,

2   1323 (W.D. Wash., 2011). Although Civil Local Rule 83.4 refers to the duties of

3   attorneys, Ewing must treat it as applicable to him. He is **ORDERED** to read and

4   obey it. He is also **ORDERED** to read and obey Fed. R. Civ. P. 11.

5         Specifically, Ewing is **ORDERED** to be courteous and civil in all

6   communications with opposing counsel, parties, and third parties and to refrain

7   from disparaging their intelligence, ethics, or behavior. This includes making

8   accusations for improper purposes (such as to harass, delay, or embarrass) or

9   making any accusation without first confirming that it is accurate and supported by

10  evidence. *See* Fed. R. Civ. P. 11(b)(1) and (3). In filings in this Court, he is

11  **ORDERED** not to attach or quote from private correspondence or other private

12  communications (including letters, emails, texts, or phone calls) between himself

13  and other parties or counsel, except as specifically authorized under applicable

14  rules or laws, or permitted by judicial officers of the Court. He is **ORDERED** to

15  refrain from making misrepresentations to opposing counsel or parties.

16        Several documents Ewing provided to the Court showed that he misleadingly

17  used the designation "JD" after his name, followed by a disclaimer mentioning

18  privilege and confidentiality, and citing legal authority.[1] At the hearing, Ewing

19  represented to the Court that he had stopped using this designation and would not

20  resume doing so, and the Court takes him at his word. When communicating with

21  counsel, parties, or third parties in connection with litigation, Ewing is **ORDERED**

22

23  _____

24  [1] Ewing offered the explanation that this was appropriate for his work as a tax

25  preparer. But the communications had nothing to do with tax preparation. In

26  context, this was likely to mislead recipients, especially non-lawyers, into believing

    he was a lawyer. In one particularly egregious example, he did this when

27  discussing settlement with a non-lawyer. He inaccurately said the case was over

    and had been resolved in his favor, apparently to convince his opponent to make

28  a quick payment.

18cv1455-LAB (JLB)

1 | not use the designation "JD" after his name or otherwise suggest that he is an
2 | attorney.

3 |      For a period of 36 months from the date this order is issued, Ewing must file
4 | a copy of this order along with any new pro se pleading he files in this District.

6 | **IT IS SO ORDERED**.

7 | Dated:  May 29, 2019

Hon. Larry Alan Burns
Chief United States District Judge

18cv1455-LAB (JLB)