UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON EWING,<br><br>                               Plaintiff,<br>v.<br>MARK POLLARD,<br><br>                               Defendant. | Case No.: 19-CV-855-CAB-BGS<br><br>**ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT AND DISMISSING CASE**<br><br>[Doc. Nos. 24, 31] |

On October 30, 2019, pro se Defendant Mark Pollard filed a motion to dismiss the first amended complaint. Because the motion and reply included evidence outside the pleadings, on December 4, 2019, the Court entered an order converting the motion to be for summary judgment and gave both parties an opportunity to present all relevant evidence. Separately, Plaintiff Anton Ewing has filed a motion for leave to file a second amended complaint. Briefing is now complete on both motions, and the Court deems them suitable for submission without oral argument. As discussed below, Ewing's motion is denied, and Pollard's motion is granted.

## I. Background

Serial litigant[1] Anton Ewing, pro se, filed this lawsuit for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Pollard is the only defendant. The case began with motion practice concerning service of the complaint, including a motion to quash service that the Court granted. Disputes over the effectiveness of service only ended when Pollard accepted service and filed a motion to dismiss. In response to that first motion to dismiss, Ewing filed the first amended complaint ("FAC"). Pollard then moved to dismiss the FAC, and as discussed above, after that motion was fully briefed, the Court entered an order converting it to a motion for summary judgment. In response to that order, Ewing filed the motion for leave to file a second amended complaint. Pollard then filed a declaration with exhibits in support of summary judgment on December 20, 2019. Ewing then filed a response to Pollard's declaration, to which Pollard filed a reply. Pollard has also opposed Ewing's motion for leave to amend.

## II. Motion for Leave to Amend

Federal Rule of Civil Procedure 15 states that courts "should freely give leave [to amend] when justice so requires." "But a district court need not grant leave to amend where the amendment: (1) prejudices the other party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmeriSourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Here, in response to the Court's order converting the motion to dismiss to one for summary judgment, Ewing filed a motion for leave to file a second amended complaint. The proposed second amended complaint ("SAC") does not allege any newly discovered facts. Instead, the proposed SAC seeks to expand the scope of this case and to complicate the legal issues in question by including calls that were expressly disclaimed in the FAC. Specifically, the FAC explicitly states: "To be clear,

---

[1] Mr. Ewing has filed over 50 lawsuits in this district since December 2014. He has frequently been admonished by the Court for discourteous conduct and for misrepresenting himself as a lawyer, and the Chief Judge of this district has required him to include one such order with any pro se matters he files in this district for three years. [Doc. No. 29 at 18-20; Doc. No. 31 at 34-36.]

2

19-CV-855-CAB-BGS

Plaintiff is suing Pollard for the directly dialed calls." [Doc. No. 21 at ¶ 11.]. The proposed SAC, meanwhile, states: "To be clear, Plaintiff is suing Pollard for the directly dialed calls as well as the call he ordered Grace to make on May 7, 2019." [Doc. No. 31 at 16 ¶ 11.].

The Court finds that the proposed SAC would prejudice Pollard, is sought in bad faith, would unduly delay this litigation, and is futile. Ewing claims that the proposed SAC is meant to clarify the allegations, but in reality it directly contradicts the FAC. Moreover, that Ewing waited until the Court converted the motion to dismiss to a motion for summary judgment instead of seeking to amend in response to the motion to dismiss itself indicates to the Court that Ewing's motives are primarily intended to cause delay and not made in good faith. Finally, in converting the motion to dismiss to one for summary judgment, the Court ordered Ewing to introduce all evidence he has supporting his claims. In response, Ewing argued as if the calls from Grace were at issue in this lawsuit, but, as discussed below, offered no evidence that would support holding Pollard liable for any calls Grace made to Ewing. Thus, the proposed SAC is futile as well. Accordingly, Ewing's motion for leave to file a second amended complaint is denied.

### III. Motion for Summary Judgment

#### A. Legal Standards

Having converted Pollard's motion to be one for summary judgment and given the parties time to submit all relevant evidence, the familiar summary judgment standard applies. Under Federal Rule of Civil Procedure 56, the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable judge or jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Anderson*, 477 U.S. at 248). When ruling on a summary judgment motion,

the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### B. Discussion

The FAC purports to assert three claims for violation of the TCPA by Pollard. Pollard admits that he called Ewing on his cell phone one time, but disputes that he used an automatic telephone dialing system ("ATDS") and that the call was without Ewing's consent. In support of summary judgment, Pollard offers evidence in the form of a declaration under oath stating that a company called Virtual Staffing Outsourcing ("VSO") with whom Pollard had recently begun working, informed Pollard that it had made an appointment for Pollard with "Tony Starc"[2] for a telephone call to discuss insurance products. [Doc. No. 32 at ¶¶ 4-5, Ex. B.]. On May 7, 2019, at 10:31 am, Pollard manually dialed the number he had received for "Mr. Starc," and the call lasted for eighteen minutes. [*Id.* at Ex. C.; *see also* Doc. No. 36 at 2]. For the first fifteen minutes of the call, Pollard believed he was talking with a Mr. Starc, who was inquisitive about the insurance business. [Doc. No. 32 at ¶ 8.] At that point, "Mr. Starc" informed Pollard that his real name was Anton and became hostile, threatened a law suit and to "shut [Pollard's] company down." [*Id.*] Pollard eventually hung up on Ewing. [*Id.*] A few minutes later, at 10:56 a.m., Ewing called Pollard back and continued to threaten a lawsuit. [*Id.* at ¶ 9.] Less than two hours later, Ewing emailed Pollard a copy of a complaint that had yet to be filed. [*Id.* at Ex. D.] According to the records of this Court's clerk's office, the original eighteen-page complaint in this action was entered onto the CM/ECF docket at 2:01 p.m. on May 7, 2019. [Doc.

---

[2] Tony Star*k* is a fictional character who becomes Iron Man in Marvel Comics. The character was portrayed by Robert Downey Jr. in numerous recent Marvel Cinematic Universe films beginning with the first Iron Man movie in 2008. *See generally* https://en.wikipedia.org/wiki/Iron_Man.

No. 1.] In other words, Ewing filed his complaint within three and a half hours of hanging up from the call with Pollard.

Ewing's response to Pollard's evidence consists of a lot of argument and claims about a call he allegedly received from "Grace" at VSO to set up the call with Pollard and why Pollard should be vicariously liable for that call. As discussed above, the FAC explicitly states: "To be clear, Plaintiff is suing Pollard for the directly dialed calls." [Doc. No. 21 at ¶ 11.]. Thus, Pollard's liability for calls by Grace is not at issue in this lawsuit. Moreover, even if it were, the only evidence Ewing offers supporting such liability is a self-serving declaration replete with legal conclusions about the relationship between Grace, VSO, and Pollard, but lacking any facts that would support holding Pollard liable for any calls made by VSO or Grace. [Doc. No. 28 at 14-15.] Ewing complains in his opposition that he has not had the opportunity to take discovery, but he fails to explain what discovery he would take and what he expects that discovery to reveal. Viewing the record in a light most favorable to Ewing, it reveals, at most, that Grace and Pollard both had some connection to VSO. There is no evidence supporting holding Pollard liable for Grace's actions, and Ewing has failed to demonstrate that such evidence exists. Thus, to the extent Ewing seeks to hold Pollard liable for any calls made by "Grace," the Court finds both that the operative FAC explicitly does not state a claim arising out of any such call, and that even if it did, there is no evidence to support holding Pollard liable for such call. Accordingly, Pollard is entitled to summary judgment on any claims arising out of calls made by "Grace."

As for calls made by Pollard, Ewing does not offer any evidence of any other calls beside the one call Pollard made to Ewing's cell phone a little over three *hours* before Ewing filed the complaint. Thus, the Court addresses each claim in the FAC below with respect to the single May 7, 2019 call from Pollard. The FAC asserts claims under three subparts of the TCPA: (1) violation of 47 U.S.C. § 227(b)(1)(A); (2) violation of 47 U.S.C. § 227(b)(1)(B); and (3) violation of 47 U.S.C. § 227(c).

### 1. Section 227(b)(1)(A)

This section of the TCPA prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-- . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). Thus, the elements of a claim under this section are: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). There is no dispute as to the first element as Pollard concedes that he called Ewing and offers no evidence disputing Ewing's declaration that the number Pollard called was for a cellular telephone. There is a dispute about the second and third elements.

As to the second element, as discussed above, Pollard offers a declaration under oath that he does not own autodialing equipment and that he manually dialed Ewing's number on his own cell phone. [Doc. No. 32 at ¶ 7.] He also includes his phone records showing the call. [*Id.* at Ex. C.]

Ewing, meanwhile, offers no evidence from which a reasonable jury could conclude that Pollard used an ATDS. His declaration states that "Pollard used an ATDS device that has the capacity to store numbers to call my DNC registered cellular phone," but offers no facts or foundation for this statement or any evidence contradicting Pollard's evidence that Pollard manually dialed Ewing from Pollard's cell phone. Moreover, Ewing offers no basis for a finding that any discovery would lead to evidence that Pollard used an ATDS. *See Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (holding that a party seeking a continuance for further discovery to oppose summary judgment, "must make clear what information is sought and how it would preclude summary judgment.") (quoting *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir.1987)); *see also Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018) (stating that "[t]he facts sought

must be 'essential' to the party's opposition to summary judgment, Fed. R. Civ. P. 56(d), and it must be 'likely' that those facts will be discovered during further discovery," and that "evidence [that is] the object of mere speculation . . . is insufficient to satisfy the rule.") (internal quotation marks and citation omitted). Accordingly, to the extent Ewing seeks a continuance pursuant to Federal Rule of Civil Procedure 56(d), his request is denied.

In light of the foregoing, the Court finds that the undisputed facts demonstrate that Pollard manually dialed Ewing's cell phone using Pollard's own cell phone. Because Pollard did not use an automatic telephone dialing system,[3] he did not violate the TCPA and is entitled to summary judgment on this claim. Thus, the Court need not address whether a dispute of fact exists as to the consent element of a TCPA claim.

### 2. Section 227(b)(1)(B)

This section of the TCPA prohibits: "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)." Thus, this section only concerns calls to residential telephone lines. The FAC alleges that Pollard's May 7, 2019, telephone call was to Ewing's cellular telephone. The FAC does not allege, and Ewing does not offer any evidence demonstrating, that Pollard (or anyone else) ever called

---

[3] Finding that the meaning of an automatic telephone dialing system as that term is used in the TCPA is "ambiguous on its face," the Ninth Circuit has held that the term "means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018). Although this definition arguably includes just about any smartphone cellular phone in use today (or indeed just about any telephone in use today considering that almost all phones store recently dialed numbers and allow redialing of missed calls), absent explicit binding precedent to the contrary, the Court declines to hold that use of a cell phone to dial another person's cell phone constitutes use of an ATDS and makes the caller liable for a TCPA violation if they did not obtain express permission from the recipient to make the call.

Ewing on a residential telephone line. Accordingly, Pollard is entitled to summary judgment on this claim as well.

### 3. Section 227(c)

Section 227(c)(5) creates a private right of action for "[a] person who has received *more than one* telephone call within any 12-month period by or on behalf of the same entity in violation of this subsection. . . ." 47 U.S.C. § 227(c)(5) (*emphasis* added). Here, the FAC does not allege, and Ewing does not offer any evidence demonstrating, that Pollard called Ewing more than once. Pollard, on the other hand, declared under oath that he only called Ewing once, and has provided his telephone records reflecting just one call to Ewing's phone number. Accordingly, Pollard is entitled to summary judgment on this claim as well.

### IV. Disposition

For the foregoing reasons, Ewing's motion for leave to amend [Doc. No. 31] is **DENIED**, Pollard's motion [Doc. No. 24] is **GRANTED**, and summary judgment is entered for Pollard. The Clerk of Court shall **CLOSE** this case.

It is **SO ORDERED**.

Dated: February 10, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge